# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| GEORGE JADUE,<br>              Appellant, | DOCKET NUMBER<br>DE-0752-21-0062-I-2 |
| v. | |
| DEPARTMENT OF HOMELAND<br>     SECURITY,<br>              Agency. | DATE: May 29, 2024 |

Dominick D. Schumacher, Esquire, and James M. Eisenmann, Esquire, Washington, D.C., for the appellant.

Sung Lee, Esquire, Houston, Texas, for the agency.

Larry Zieff, Esquire, Irving, Texas, for the agency.

Michelle Morton, Esquire, El Paso, Texas, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Chairman Harris issues a separate opinion.
Vice Chairman Limon issues a separate opinion.

## ORDER

The appellant has filed a petition for review of the initial decision which sustained his removal. The two Board members cannot agree on the disposition of the petition for review. Therefore, the initial decision now becomes the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1200.3(b) (5 C.F.R. § 1200.3(b)). This decision shall not be considered as precedent by the Board in any other case. 5 C.F.R. § 1200.3(d).

## NOTICE OF APPEAL RIGHTS[1]

You may obtain review of the final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of the final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[1] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of the final decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and

to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[2]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[2] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/
                                        _____
                                        Gina K. Grippando
                                        Clerk of the Board

Washington, D.C.

<u>SEPARATE OPINION OF CATHY A. HARRIS</u>

in

*George Jadue v. Department of Homeland Security*

MSPB Docket No. DE-0752-21-0062-I-2

On April 14, 2018, the agency removed the appellant based on 11 specifications of lack of candor, all of which concerned information that the appellant provided or failed to provide about the circumstances under which he left his previous employment. *Jadue v. Department of Homeland Security*, MSPB Docket No. DE-0752-21-0062-I-1, Initial Appeal File (IAF), Tab 11 at 5-11, Tab 15 at 5-12. The appellant contacted an equal employment opportunity (EEO) counselor, and then, on August 18, 2018, he filed a timely formal complaint of discrimination. IAF, Tab 28 at 5-13. On September 4, 2018, the agency accepted the complaint on the issues of whether the appellant's removal was based on race, color, religion, or national origin discrimination, or was in retaliation for prior EEO activity. *Id.* at 176-80. On May 22, 2019, the EEO investigator assigned to the case completed the report of investigation (ROI) and submitted it to the agency. *Id.* at 185. Approximately 11 months later, on April 6, 2020, the agency forwarded a copy of the report to the appellant. IAF, Tab 5 at 5. On October 28, 2020, the agency issued a final agency decision (FAD) finding no discrimination, and on October 30, 2020, it served a copy of that decision on the appellant. *Id.* at 4-8. The appellant timely filed the instant mixed-case appeal. IAF, Tab 1; *see* 5 C.F.R. § 1201.154(b)(1).

After a hearing, the administrative judge issued an initial decision sustaining the appellant's removal. *Jadue v. Department of Homeland Security*, MSPB Docket No. DE-0752-21-0062-I-2, Appeal File, Tab 56, Initial Decision. The appellant has filed a petition for review, contesting among other things the administrative judge's ruling on a motion for sanctions that he filed related to the

agency's processing of his EEO complaint. Petition for Review (PFR) File, Tab 3. For the following reasons, I would remand this appeal for the administrative judge to reconsider the appellant's motion.

The appellant's motion for sanctions was based on the agency's "unjustified and unexplained" delay in producing a ROI and FAD. IAF, Tab 17. He argued that the agency was required under 29 C.F.R. § 1614.108(f) to provide him with a copy of its investigative file within 180 days of the date that he filed his formal complaint. However, it took the agency in this case 612 days to do so. *Id.* at 13. The appellant further argued that the agency was required under 29 C.F.R. § 1614.302(d)(2), to issue a final decision within 45 days of the ROI's completion. *Id.* at 9. However, the agency was again untimely and did not issue its decision until 162 days after it was due, thereby compounding its previous delay in issuing the ROI. *Id.* at 14. The appellant argued that Equal Employment Opportunity Commission (EEOC) precedent supports a sanction of default judgment in these circumstances, and he requested that the administrative judge issue a default judgment, or in the alternative, sanction the agency by excluding certain evidence or arguments, or making adverse inferences. *Id.* at 14-24.

The administrative judge denied the appellant's motion, explaining that, when an agency fails to issue a FAD in a mixed case within 120 days, the employee's remedy is to appeal the matter directly to the Board. IAF, Tab 18 at 1; *see* 5 U.S.C. § 7702(e)(2); 5 C.F.R. § 1201.154(b)(2). Considering the absence of Board precedent for sanctions in this situation, he declined "to fashion an additional remedy." *Id.*

The Board's Authority to Issue Sanctions

The Board's regulations are broadly written to permit an administrative judge to "impose sanctions upon the parties to serve the ends of justice." 5 C.F.R. §1201.43. The regulation provides examples of situations in which an administrative judge may impose sanctions, including when a party fails to comply with a Board order, fails to prosecute or defend an appeal, fails to make a

timely filing, or engages in contumacious conduct or conduct prejudicial to the administration of justice. *Id.* Notably, the regulation provides that the sanctions authority "includes, but is not limited to" the aforementioned examples. *Id.* An administrative judge may issue a wide range of sanctions, including dismissal of the appeal for failure to prosecute, or ruling in favor of the appellant for failure to defend.[1]  5 C.F.R. § 1201.43(b).  Possible sanctions for disobeying an administrative judge's order include drawing an inference in favor of the requesting party with regard to the information sought, prohibiting the party failing to comply with an order from introducing evidence concerning the information sought or from otherwise relying upon testimony related to that information, permitting the requesting party to introduce secondary evidence concerning the information sought, and eliminating from consideration any appropriate part of the pleadings or other submissions of the party that fails to comply with the order.  5 C.F.R. § 1201.143(a).  For a failure to make a timely filing, an administrative judge may refuse to consider any motion or other pleading that is not filed within the applicable time limit.  5 C.F.R. § 1201.143(c).  Before issuing sanctions, the administrative judge should provide appropriate prior warning, allow a response to the actual or proposed sanction when feasible, and document the reasons for any resulting sanction in the record. 5 C.F.R. § 1201.43.

Sanctions in Nonmixed Cases

The EEOC's regulations require agencies to "[p]rovide for the prompt, fair, and impartial processing of [discrimination and retaliation] complaints" and to "develop an impartial and appropriate factual record upon which to make

---

[1] Although the Board lacks authority to issue summary judgments in appeals governed by 5 U.S.C. § 7701, *Crispin v. Department of Commerce*, 732 F.2d 919, 922-24 (Fed. Cir. 1984), the Board's authority to issue dispositive sanctions has never been questioned.

findings" within 180 days. 29 C.F.R. §§ 1614.102(a)(2), 1614.108(b), (e)-(f). These regulations provide that "[t]he agency shall complete its investigation within 180 days of the date of filing of an individual complaint." 29 C.F.R. § 1614.108(e). Further, the agency is required to "provide the complainant with a copy of the investigative file" within that 180-day period. 29 C.F.R. § 1614.108(f). The EEOC deems an investigation to be timely and complete when, among other actions, the agency provides the complainant with a copy of the investigative file, including a summary of the investigation, within the applicable time period. EEO Management Directive (MD) 110, ch. V § 5.D (August 5, 2015).

In nonmixed cases, the EEOC's Management Directive specifically contemplates sanctions in the event the ROI is not completed within the regulatory timeframe:

> If after reviewing the file, the Administrative Judge determines that the investigation is inadequate due to the agency's failure to complete the investigation within the time limits . . ., or the agency has not cooperated in the discovery process . . . the Administrative Judge may take the following actions:

> 1. Subject the agency to adverse inference findings in favor of the complainant;

> 2. Consider the issues to which the requested information or testimony pertains to be favorable to the complainant;

> 3. Exclude other evidence offered by the agency;

> 4. Permit the complainant to obtain a summary disposition in his/her favor (that is, default judgment) on some or all of the issues without a hearing; or

> 5. Take other action deemed appropriate, including, but not limited to, requiring the agency to pay any costs incurred by the complainant in taking depositions or in conducting any other form of discovery.

> . . . .

> However, before an Administrative Judge may sanction an agency for failing to develop an impartial and appropriate factual record or for not cooperating in the discovery process, the Administrative

Judge must issue an order to the agency or request the documents, records, comparative data, statistics, or affidavits. Such order or request shall make clear that sanctions may be imposed and the type of sanction that could be imposed for failure to comply with the order unless the agency can show good cause for that failure. In appropriate circumstances, the order or request may provide the agency with an opportunity to take such action as the Administrative Judge deems necessary to correct the deficiencies in the record within a specified reasonable period of time. Only on the failure of the agency to comply with the Administrative Judge's order or request and the notice to show cause may the Administrative Judge impose a sanction or the sanctions identified in the order or request.

EEO MD 110, ch. 7 § III.A (citations omitted). Nevertheless, the EEOC's Handbook for Administrative Judges (AJ) states that an administrative judge does not need to issue a show cause order when the agency has failed to comply with the EEOC's regulations and the agency was on notice that its conduct could be sanctioned. *See* EEOC AJ Handbook, ch. § 6.II.a. Further, "[a]n Order to Show Cause is not necessary where a party has filed a motion for specific sanctions and the non-moving party has had an opportunity to respond." *Id.*

The EEOC has found an entry of default judgment in favor of a complainant to be an appropriate sanction in cases where the agency failed to investigate the complaint within 180 days in violation of the EEOC's regulations. For example, in *Reading v. Department of Veterans Affairs*, EEOC Appeal No. 07A40125, 2006 WL 2992420 (Oct. 12, 2006), the EEOC upheld the administrative judge's entry of default judgment as an appropriate sanction for a violation of 29 C.F.R. § 1614.108(e), because the agency did not dispute that an investigation was completed or even conducted within the 180-day period. Likewise, in *Royal v. Department of Veterans Affairs*, EEOC Appeal No. 0720070045, 2009 WL 3163287 (Sept. 25, 2009), the EEOC upheld an entry of default judgment against the agency for failure to complete the investigation within 180 days. The EEOC looked at four factors in determining whether the sanction of default judgment was warranted: (1) the extent and nature of the

noncompliance, including the justification presented by the noncomplying party; (2) the prejudicial effect of the noncompliance on the opposing party; (3) the consequences resulting from the delay in justice, if any; and (4) the effect on the integrity of the EEO process. *Id.*

> The EEOC observed as follow:

> [G]iven the length of time that the processing of a federal sector EEO complaint can take, any delays past the time frames in the regulations can impact the outcome of complainant's claims. Witnesses may retire or leave the agency, often without notice, or documents may be misplaced or destroyed (either intentionally or not) when the responsible party is not notified to maintain the documents as relevant to an ongoing EEO investigation. The agency's assertion that complainant did not suffer any prejudice is speculative, at best.

*Royal*, 2009 WL 3163287, at *6. The EEOC continued:

> [W]e find that in the case where an agency has not initiated an investigation that could reasonably be completed within the 180-day time frame, the fourth factor, the effect on the integrity of the EEO process, is paramount. Protecting the integrity of the 29 C.F.R. Part 1614 process is central to the Commission's ability to carry out its charge of eradicating discrimination in the federal sector. As we noted in our previous decision, the Commission has the inherent power to protect its administrative process from abuse by either party and must insure that agencies, as well as complainants, abide by its regulations. We have previously issued cases in which we have affirmed actions taken by [administrative judges] which were designed to bring to account an agency's non-compliance with the regulations or with Orders issued by an [administrative judge].

*Id.* (emphasis added). The EEOC concluded:

> Thus, we find that a sanction in the form of a default judgment is the appropriate sanction in this case. This decision turns on the fact that the agency failed to commence an EEO investigation that could reasonably be completed within the 180-day period following the filing of the formal complaint, as required by the regulations.

*Id.*; *see also Adkins v. Federal Deposit Insurance Corporation*, EEOC Appeal No. 0720080052, 2012 WL 169813 (Jan. 13, 2012) (finding that the administrative judge did not abuse his discretion in issuing a decision fully in

favor of the complainant as a sanction for the agency's excessive delay in completing the investigation); *Lomax v. Department of Veterans Affairs*, EEOC Appeal No.0720070039, 2007 WL 2981091 (Oct. 2, 2007) (upholding an entry of default judgment against the agency for its failure to conduct the investigation in the 180-day period); *Montes-Rodriquez v. Department of Agriculture*, EEOC Appeal No. 0120080282, 2012 WL 252677 (Jan. 12, 2012) (entering default judgment for the complainant where the EEOC ordered an investigation completed in 150 days and the agency delayed 202 days before initiating the formal investigation, noting "[o]ur decision to issue a default judgment will effectively emphasize to the Agency the need to comply with EEOC orders in a timely manner, as well as ensure that future Agency investigations are adequately developed for adjudication"); *Ricardo K. v Department of Veterans Affairs*, EEOC Appeal No. 2020003751, 2021 WL 5890146 (Nov. 6, 2021) (summarily affirming default judgment where the ROI was approximately 6 months late).

> As noted by the EEOC in *Cox v. Social Security Administration*:

> An agency which treats the deadlines in the hearings process, and the requirement to produce an adequately developed ROI, as optional, based on when its staffing and resources may allow it comply, has a negative effect on the outcome not only of the immediate case, but also of any other cases under its jurisdiction, as well as those under the jurisdiction of annuitant AJ. The Commission must [e]nsure that agencies, as well as complainants, abide by its regulations and the Orders of its [administrative judges].

EEOC Appeal No. 0720050055, 2009 WL 5223778, *10 (Dec. 24, 2009); s*ee also Talahongva-Adams v. Department of the Interior*, 0120081694, 2010 WL 2253800, *4 (May 28, 2010) (noting "the agency's delay in completing the investigation within the 180-day regulatory period is no small non-compliance matter"). In *Montes-Rodriguez*, the EEOC found:

> Protecting the integrity of the 29 C.F.R. Part 1614 process is central to the Commission's ability to carry out its charge of eradicating discrimination in the federal sector. An agency which treats the time deadlines for production of an adequately developed investigation as

optional has a negative effect on the outcome not only of the immediate case, but also of any other cases under its jurisdiction. The Commission must insure that all parties abide by its regulations and orders. Our decision to issue a default judgment will effectively emphasize to the Agency the need to comply with Commission orders in a timely manner, as well as ensure that future Agency investigations are adequately developed for adjudication.

2012 WL 252677, at * 7 (citations omitted).

In *Dalton E. v. Department of Housing and Urban Development*., EEOC Appeal No. 0720170038, 2018 WL 6599708 (Nov. 30, 2018), *modified on recons.*, EEOC Request No. 2019001739 (Sept. 29, 2022), the EEOC found that sanctions were appropriate where the agency did not learn that a complaint had been filed and that an ROI had not been produced until about 18 months after the fact. The formal complaint had been filed as a conflict complaint with a different agency, and the agency blamed the other agency for the delay in processing. *Dalton E.*, 2018 WL 65991739, at *3. However, the EEOC rejected this argument stating, "[t]he regulations found at 29 C.F.R. § 1614.108(b) squarely place the responsibility for an accurate, complete investigation, completed within 180 days, upon the Agency." *Id.* While the EEOC initially granted default judgment, it revised its sanction on reconsideration finding that "the evidentiary sanction of excluding the Report serves to remedy the Agency's conduct. Further, once the Report is excluded from evidence, the Agency has not met its burden to offer a legitimate, nondiscriminatory explanation for its actions. Summary judgment for the Complainant therefore is appropriate." *Dalton E.*, EEOC Request No. 2019001739, 2022 WL 10369699, at *4.

In sum, the EEOC has long issued sanctions for an agency's failure to issue ROIs in a timely manner. As such, agencies have been on notice for many years that they may be subject to sanctions for their failure to comply with the EEOC's regulations regarding timely completion of ROIs.

The Board's authority to issue sanctions to serve the ends of justice extends to the situation in which an agency fails to issue a ROI or FAD within the regulatory deadlines.

The Board's authority to adjudicate discrimination claims arises from the "integrated scheme of administrative and judicial review" contained in the Civil Service Reform Act (CSRA) of 1978. *Hess v. U.S. Postal Service*, 124 M.S.P.R. 40, ¶ 9 (2016) (citing *United States v. Fausto*, 484 U.S. 439, 445, 108 S. Ct. 668, 98 L.Ed.2d 830 (1988) (finding that a former Federal employee without Board appeal rights was not entitled to seek judicial review of his suspension), *superseded by statute on other grounds as stated in Kaplan v. Conyers*, 733 F.3d 1148 (Fed. Cir. 2013)); CSRA, Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in relevant part at 5 U.S.C. §§ 7701-7703).

The CSRA "provides diverse procedural routes for an employee's pursuit of a mixed case" before the Board. *Perry v. Merit Systems Protection Board*, 582 U.S. 420, 424 (2017). As the Board observed in *Hess*, a Senate Report on the CSRA expressed the intent that the Board consider discrimination claims together with "the employee's inefficiency or misconduct" as "two sides of the same question." S. Rep. No. 95-969, at 53 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2723, 2775; *Hess*, 124 M.S.P.R. 40, ¶ 15. This would permit a "single unified personnel policy which took into account the requirements of all the various laws and goals governing Federal personnel management." *Hess*, 124 M.S.P.R. 40, ¶ 9. The mixed-case appeal process was intended to streamline adjudication, avoid "forum shopping and inconsistent decisions," and ensure that "the Board and the [EEOC] work together to resolve any differences." *Id.*

Similarly, a joint statement by a Senate and House conference committee expressed the goal to "maintain[ ] the principle of parity between the MSPB and EEOC" in the mixed-case appeal process. H.R. Rep. No. 95-1717, at 139 (1978) (Conf. Rep.), *as reprinted in* 1978 U.S.C.C.A.N. 2860, 2873. Therefore, the Board's decision in a mixed-case appeal was to "include . . . any remedial order

the [EEOC] . . . may impose under law." H.R. Rep. No. 95-1717, at 140, *as reprinted in* 1978 U.S.C.C.A.N., at 2873. The EEOC was to determine whether the Board correctly interpreted the laws "over which the EEOC has jurisdiction" and awarded an appropriate remedy. H.R. Rep. No. 95-1717, at 140, *as reprinted in* 1978 U.S.C.C.A.N. at 2873-74; *Hess*, 124 M.S.P.R. 40, ¶ 16.

Regardless of the route taken, an employee's only right to an evidentiary hearing in a mixed case is before the Board. *Hess*, 124 M.S.P.R. 40, ¶ 18. If the employee chooses to first file an EEO complaint with the agency in a mixed case, the agency is required by statute to "resolve such matter within 120 days." 5 U.S.C. § 7702(a)(2). Thereafter, the employee must file an "appeal within 30 days after the appellant receives the agency resolution or final decision on the discrimination issue; or (2) If the agency has not resolved the matter or issued a final decision on the formal complaint within 120 days, the appellant may appeal the matter directly to the Board at any time after the expiration of 120 calendar days. Once the agency resolves the matter or issues a final decision on the formal complaint, an appeal must be filed within 30 days after the appellant receives the agency resolution or final decision on the discrimination issue." 5 C.F.R. § 1201.154(b).

Although a mixed-case complainant may appeal to the Board prior to the issuance of a FAD once 120 days have passed, the complainant may wish and has the right to await the issuance of an ROI and then a FAD. In that case, the EEOC's regulations state that the agency has 180 days from the date of the filing of the formal complaint to issue its ROI. 29 C.F.R. §1614.108(f). However, given the statutory imperative that the matter be concluded either through resolution or a FAD at the Agency level within 120 days, 5 U.S.C. § 7702(a)(2), the ROI and FAD should both be completed well before 180 days to ensure compliance with the statute.

The Board, in applying substantive discrimination law, defers to the EEOC. *Hess*, 124 M.S.P.R. 40 ¶ 10; *Southerland v. Department of Defense*, 122 M.S.P.R.

51, ¶ 12 (2014) (observing that the Board generally defers to the EEOC on substantive discrimination law). The Board should therefore defer to the EEOC that agencies should be held to complete ROIs within 180 days. This meets Congress's interest that the Board and the EEOC ensure parity in proceedings and a streamlining of adjudication in the mixed-case appeals process. As a practical matter, it does not make sense that employees with claims pending before the EEOC may expect enforcement of this deadline, whereas employees with mixed-case claims pending before the Board may not. Agencies should not be incentivized to skip or delay investigations of discrimination complaints just because the types of personnel actions at issue may differ.

As mentioned above, although employees may choose to appeal to the Board on a mixed-case claim after only 120 days have passed since the filing of a formal discrimination complaint, 29 C.F.R. § 1614.302(d)(1), the employee also has the right to await the issuance of the ROI and a FAD. When the employee exercises that right, the employee also has the right to expect that the agency will comply with its regulatory obligations to complete its ROI within at least 180 days and issue a FAD 45 days thereafter. 29 C.F.R. § 1614.108; 1614.302(d)(2). Choosing the immediate route to a Board appeal may be advantageous for certain individuals; indeed, an employee need not even file a formal complaint in a mixed case prior to proceeding to a Board appeal. But for others, they retain the right to timely receive the complete ROI and a FAD. The FAD may end the matter if the employee is satisfied with the result, obviating the need for further administrative litigation or civil actions. Putting aside the strategic, financial, and practical reasons that an employee may choose one route or the other, the rights are embedded in both statute and regulation.

To ensure the integrity of the process, agencies must be held accountable when they fail to comply with the deadlines set in the regulations, regardless of whether the employee's EEO complaint is mixed. The law disfavors a right without a remedy, *see Peck v. Jenness*, 48 U.S. 612, 623 (1849), and a

complainant's ability to file directly with the Board after 120 days is not a remedy, but a failsafe, *see* 5 U.S.C. § 7702(e)(2). Moreover, the Board's refusal or failure to impose sanctions in concert with the EEOC would have the perverse effect of incentivizing agencies to prioritize investigations into less serious personnel actions that are not appealable to the Board.[2]

In this case, the appellant exercised his right to await the delivery of both the ROI and the FAD. The administrative judge denied the appellant's motion for sanctions on the grounds that the appellant could have appealed to the Board after 120 days. However, the appellant should not be penalized for exercising his right to await the ROI and FAD. In so waiting, the appellant did not relinquish his right to expect that the agency timely delivered both documents, as required by statute. 5 U.S.C. § 7702(a)(2)(B). I appreciate the administrative judge's reluctance to extend sanctions to the matter given the lack of Board precedent on this issue. However, given the broad nature of the Board's sanctions regulation, the EEOC's precedent on the matter, and the egregious delay by the agency in this case, I would find that the administrative judge should consider the merits of the appellant's motion according to the criteria set forth below.

Criteria for Issuing Sanctions

It would be appropriate for the Board to adopt the *Royal* factors in considering a motion for sanctions regarding an agency's failure to comply with its obligations in completing a ROI or a FAD in a timely fashion. Specifically, an administrative judge should consider (1) the extent and nature of the

---

[2] I recognize that the appellant could petition the EEOC to consider the Board's decision under 5 U.S.C. § 7702(b) to seek sanctions even if it were the case that the Board does not possess such authority. However, it would be unnecessarily cumbersome to force an appellant to do so given the intention to have a single unified personnel policy and maintain the parity between EEOC and the MSPB in such cases. *See Hess*, 124 M.S.P.R. 40, ¶ 15. As such, I would find that the broad language of the Board's sanctions regulation encompasses such authority here.

noncompliance, including the justification presented by the noncomplying party; (2) the prejudicial effect of the noncompliance on the opposing party; (3) the consequences resulting from the delay in justice, if any; and (4) the effect on the integrity of the EEO process.

I recognize that the process for a Federal sector hearing at the EEOC differs in some respects from a mixed-case hearing before the Board. For example, before the Board, witnesses may be subpoenaed, whereas the EEOC does not currently have subpoena power. Thus, the prejudicial effect due to witnesses leaving Federal service may be weighed differently. The passage of time is still a pertinent factor in terms of considering the prejudicial effect caused by memory loss and the unavailability of information.

So too, I recognize that such motions for sanctions may not be appropriate in all mixed cases in which a ROI has not been produced at the time that the appeal is filed before the Board. For example, employees may choose to appeal directly to the Board without filing an EEO complaint. *Johnson v. Department of Justice*, 30 M.S.P.R. 141, 142 (1986); *see* 5 U.S.C. § 7702(a). In those instances, a ROI or a FAD would not be expected to be issued. Or, in other instances, employees may choose to file their appeals after 120 days have passed since the filing of the formal complaint. In those cases, the agency's deadline to complete the ROI would not have yet tolled.

I agree with the EEOC that the last *Royal* factor, the effect on the integrity of the EEO process, is the most important. Equal opportunity lies at the core of the merit systems. Although the EEOC is the primary administrator of Federal sector antidiscrimination laws, the process of enforcing those laws depends on the active cooperation of every Federal agency. It is therefore essential that public employees and the public at large be confident that individual agencies share this commitment. As the EEOC stated in *Adkins*, 2012 WL 169813, at *11, "When federal agencies fail to abide by the most basic and fundamental tenets enshrined in the EEOC's regulations, the public's confidence in the integrity and soundness

of the EEO process erodes." As such, we reiterate that the Board will remain stalwart in ensuring adherence to merit system principles, including antidiscrimination.

I would also have the administrative judge consider the Board's precedent on issuing sanctions, including that sanctions may be imposed only insofar as warranted to preserve the ends of justice.[3] *Montee v. Department of Justice*, 84 M.S.P.R. 1, ¶ 12 (1999). Good faith efforts falling short of full compliance with an order are to be considered in determining whether a sanction is appropriate. *See Crespo v. U.S. Postal Service*, 53 M.S.P.R. 125, 130-31 (1992); *see also Macon v. Department of the Air Force*, 46 M.S.P.R. 410, 415 (1990) (explaining that, although the appellant did not show good cause for his complete failure to comply with certain of the administrative judge's orders, the fact that he had made "some effort" to comply with the orders was a reason not to impose sanctions).

Conclusion

In conclusion, I would remand this appeal for the administrative judge to reconsider the appellant's motion for sanctions and allow the parties to submit updated briefing and argument on whether sanctions are appropriate, taking into account the *Royal* factors and the Board's criteria for issuing sanctions, as well as the current posture of the case, including that the parties completed discovery and a hearing. Were the administrative judge to determine that sanctions are appropriate, he should consider in the first instance what particular sanction is

---

[3] Sanctions are normally levied for a party's actions or inactions after the appeal is filed. However, levying sanctions for some types of pre-litigation conduct, such as spoliation of evidence or failure to timely process an EEO complaint, would undoubtedly be appropriate under some circumstances.

best suited for the matter. Although a ruling in favor of the appellant may be appropriate in some circumstances, a lesser sanction may also be imposed.


_____/s/_____

Cathy A. Harris
Chairman

in

*George Jadue v. Department of Homeland Security*

MSPB Docket No. DE-0752-21-0062-I-2

 

While working in a prior job with the U.S. State Department, the appellant had his security clearance suspended based on his failure to report in his background investigation forms that he was a dual citizen and held a passport from a country other than the United States. As a result, he was indicted in Federal court on two charges of making false statements and one charge of obstruction of justice. The appellant then entered into an agreement with the U.S. Attorney's Office in which he agreed to resign from the State Department in exchange for the dismissal of the criminal charges against him.

The appellant thereafter was not fully candid regarding those events when completing his Department of Homeland Security application and background forms, as well as during his response to agency interrogatories and interviews. The agency therefore removed him from his Criminal Investigator position based on a charge of lack of candor supported by 11 specifications.

On appeal after the agency issued a final decision following the appellant's equal employment opportunity (EEO) complaint, the Board's administrative judge sustained the charge (4 of the 11 specifications), found the appellant's affirmative defenses unproven, and affirmed the removal. The administrative judge also denied the appellant's motion for sanctions against the agency. The appellant had requested sanctions in the form of a default judgment in his favor, the exclusion of certain evidence or arguments, or an adverse inference, based on the agency's delayed processing of his EEO complaint before the Board appeal was filed, including delays in providing a copy of its investigative file and issuing a final decision. I would affirm the initial decision as modified, to clarify

the appropriate standards for the appellant's discrimination and retaliation affirmative defenses, and find no abuse of discretion by the administrative judge in denying sanctions.

Regarding the sanctions question, I firmly believe that Federal agencies must comply with the regulations issued by the Equal Employment Opportunity Commission (EEOC) in terms of providing for the prompt, fair, and impartial processing of discrimination and retaliation complaints. Such timely compliance is essential to the integrity of the EEO process and the mission of eradicating discrimination and retaliation in the Federal sector, and lessens the risk that a processing delay will impact the outcome of a complainant's claim through, for example, the retirement or departure of witnesses or the loss or destruction of documents. The agency's failure to comply with the EEOC's regulations in this case is reprehensible. Nevertheless, I also believe that the Board does not currently have the authority to impose sanctions based on such conduct, and that any remedy in that regard must be sought before the EEOC.

Under 5 U.S.C. § 7702(a)(1), the Board "shall . . . decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of this title and this section." There is nothing within sections 7701-7702 that permits the Board to "decide" an issue of discrimination and the appealable action by means of a default judgment sanction, for example, when an agency does not follow the EEOC's regulations before an appeal is filed. In fact, Congress spoke to the manner in which agency processing delays would be addressed when it indicated that an agency's failure to issue a judicially reviewable action in a mixed case within 120 days entitles an employee to appeal the matter to the Board. 5 U.S.C. § 7702(e)(2). Congress could have set forth other remedies for an employee in that situation but did not. The EEOC's regulations similarly provide for a remedy when an agency does not provide a copy of its investigative file within 180 days from the filing of the complaint:

> If the agency does not send the notice required in paragraph (f) of this section within the applicable time limits, it shall, within those same time limits, issue a written notice to the complainant informing the complainant that it has been unable to complete its investigation within the time limits required by § 1614.108(f) and estimating a date by which the investigation will be completed. Further, the notice must explain that if the complainant does not want to wait until the agency completes the investigation, he or she may request a hearing in accordance with paragraph (h) of this section, or file a civil action in an appropriate United States District Court in accordance with § 1614.407(b). Such notice shall contain information about the hearing procedures.

29 C.F.R. § 1614.108(g); 29 C.F.R. § 1614.302(d) (providing that the procedures set forth in "subpart A" shall generally govern the processing of mixed-case complaints). I further note that, if an appellant in a mixed case is unhappy with the Board's ruling on a motion for sanctions for an agency's failure to comply with an EEOC regulation, the Board's final decision may be appealed to the EEOC, where the sanctions issue can be addressed. *See Justin R. v. Equal Employment Opportunity Commission*, EEOC Doc. No. 0120162687, 2019 WL 7170730 (Nov. 27, 2019) (responding to the complainant's motion for sanctions based on an agency's failure to develop an impartial and appropriate factual record under 29 C.F.R. § 1614.108(b) by noting that, if the Board does not address the motion to his satisfaction, "then Complainant may raise it with the Commission should he file a petition for consideration by the EEOC from the MSPB's decision").

Moreover, there appears to be no express statutory grant of authority for the Board to impose a sanction. Instead, 5 U.S.C. § 7701(k) and 5 U.S.C. § 1204(h) generally provide that the Board may prescribe such regulations to carry out the purpose of section 7701 and perform the Board's functions. Pursuant to those authorities, the Board promulgated 5 C.F.R. § 1201.43. Any potential basis for a sanction does not, in my view, fall within the authority set forth in that regulation.

Section 1201.43 provides as follows:

The judge may impose sanctions upon the parties as necessary to serve the ends of justice. This authority covers, but is not limited to, the circumstances set forth in paragraphs (a), (b), (c), (d), and (e) of this section. Before imposing a sanction, the judge shall provide appropriate prior warning, allow a response to the actual or proposed sanction when feasible, and document the reasons for any resulting sanction in the record.

The examples in paragraphs (a)-(e) all involve actions taken by a party while their appeal is pending before the Board, including failure to comply with an order, failure to prosecute or defend the appeal, failure to make a timely filing, and engaging in contumacious conduct. This is consistent with the Board's authority under 5 U.S.C. § 1204(a)(2) to order any Federal agency or employee to comply with any order or decision issued by the Board under the authority granted by statute for the Board to hear and adjudicate cases within its jurisdiction, and to enforce compliance with any such order by, for example, threatening to impose a sanction. Although section 1201.43 indicates that the sanction authority is not limited to the circumstances described, a general principle of statutory or regulatory interpretation, ejusdem generis, is that general or collective words or phrases that follow the enumeration of specific things will be held to refer to, and interpreted in light of, things of the same kind and with common attributes as those shared by the specified items. *See, e.g.*, *Bissonnette v. LePage Bakeries Park St., LLC.*, 601 U.S. 246, 255 (2024) (holding that specific terms in a statute limit a residual clause, and that a residual clause does not "swallow[] up" a statute's narrower terms); *King v. Department of the Air Force*, 122 M.S.P.R. 531, ¶ 7 n.4 (2015). Thus, I interpret section 1201.43 as authorizing sanctions for behavior by a party that occurs *after* a Board appeal has been filed, not behavior that predates the Board appeal. In keeping with this interpretation, the regulation contemplates the administrative judge providing an "appropriate prior warning" before imposing a sanction, thereby implying that the warning is intended to persuade the party to change the improper behavior or face

the possibility of a sanction. A Board-issued warning provided to an agency for a delay in providing a copy of an investigative file or issuing a final decision on an EEO complaint would, by contrast, be essentially meaningless, as it would not likely induce the agency to complete an investigation or issue a final decision once the Board appeal had already been filed. *See* 29 C.F.R. § 1614.107(a)(4) (providing that an agency shall dismiss a complaint when the complainant has raised the matter in a mixed-case appeal to the Board); 29 C.F.R. § 1614.302(c)(1).

This interpretation is also consistent with the Board's intent when it promulgated the sanction regulation in 1979. At that time, section 1201.43 similarly provided that "[t]he presiding official may impose sanctions upon the parties as necessary to serve the ends of justice, including but not limited to the instances set forth in paragraphs (a), (b), and (c) of this section," which included a failure to comply with an order, failure to prosecute or defend, and failure to make a timely filing. 44 Fed. Reg. 38,342, 38,353 (June 29, 1979). In explaining the amendments to the proposed rule, the Board noted that the section had been revised "to make clear that these sanctions will not be imposed if the parties can demonstrate good cause for their failure to take an action." *Id.* at 38,345. The Board indicated that, while it was sympathetic to the problems that may "arise in the course of a proceeding," delay "in the proceedings" that harms other parties will not be tolerated, and in order to avoid sanctions, all parties must meet the burden of moving forward in a manner "consistent with these regulations." This commentary shows that it is behavior by the parties in the course of the proceedings before the Board that may warrant the imposition of sanctions, and that such behavior must be inconsistent with "these regulations," i.e., the Board's regulations, not EEOC regulations.

Interpreting section 1201.43 as permitting the Board to impose sanctions for actions that pre-date the Board appeal raises similar concerns to those expressed by the court in *King v. Jerome*, 42 F.3d 1371, 1373, 1375-76 (Fed. Cir.

1994). In that case, the Board held that an agency's undue disruption determination that was made after the issuance of an interim relief order was subject to a "bad faith" review by the Board. The court disagreed and reasoned as follows:

> The board argues that these remedies [i.e., alleging a prohibited personnel practice before the Office of Special Counsel or filing a discrimination complaint based on an allegedly retaliatory undue disruption determination] do not give the employee as effective and efficient relief as its review does. It argues that "review of agency undue disruption determinations is the most effective and efficient means of ensuring that agencies do not take retaliatory actions against employees in the guise of providing interim relief," and that it would be "absurd to require the time and expense of an additional administrative action to protect an employee from abuse in the interim relief process when the Board can effectively protect the employee at little or no marginal cost." The answer to this argument is that the board does not have the authority to determine the most efficient and effective means to prevent agency retaliation – it has only as much authority as Congress chooses to give it. *Cowan*, 710 F.2d at 805; *Van Werry*, 995 F.2d at 1050. Congress did not grant it the authority to review an agency's determination made under section 7710(b)(2), and it is not for the board to supplant the remedies Congress expressly provided or create new remedies which it believes Congress overlooked. *See United States v. Fausto*, 484 U.S. 439, 108 S. Ct. 668, 98 L.Ed.2d 830 (1988); *Carter v. Gibbs*, 909 F.2d 1452 (Fed. Cir. 1990).

*Id.* at 1375-76.

Although it could be argued that it would be more effective and efficient for the Board to have the same sanction authority as the EEOC when an agency does not comply with the EEOC's regulations before an appeal is filed, Congress did not grant it that authority, and it is not for the Board to create new remedies that it believes Congress overlooked. Instead, Congress chose to permit employees in those situations to appeal the matter to the Board. As set forth above, the Board's regulations, in their present form, do not contemplate such sanctions.

In sum, while I agree that agencies must comply with the EEOC's regulations by completing investigations and issuing final decisions within the EEOC's regulatory timeframe, I am not convinced that a remedy for such a violation, which is not an independently appealable action before the Board, lies with the Board. An administrative judge's ruling on sanctions is subject to an abuse of discretion standard, *see Social Security Administration v. Levinson*, 2023 MSPB 20, ¶ 53, and in light of the foregoing, I see no abuse of discretion here.

_____/s/_____
Raymond A. Limon
Vice Chairman